UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STMICROELECTRONICS, INC.,

             Plaintiff,

      v.

MANUEL LOPEZ,

             Defendant.

Case No.  15-cv-3919-PJH

**ORDER DENYING MOTION TO DISMISS AND DENYING MOTION TO TRANSFER**

      Defendant's motion to dismiss the complaint for improper venue, or in the alternative, to transfer venue to the Southern District of California, came on for hearing before this court on December 2, 2015.  Plaintiff appeared by its counsel Rachel R. Davidson, and defendant appeared by his counsel Jayson M. Lorenzo.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby DENIES the motion to dismiss and DENIES the alternative motion to transfer.

                                             **BACKGROUND**

      Plaintiff STMicroelectronics Inc. ("ST Micro") is a Delaware corporation with its corporate headquarters in Texas.  Defendant Manuel Lopez ("Lopez") resides in Brentwood, Contra Costa County, California.

      This is an action for declaratory relief, arising out of events that led to the filing of a lawsuit in the Superior Court of California, County of San Diego, in March 1989.  The suit was filed by Andarax Technologies Corporation (then an active Canadian corporation), Andarax Corporation (then an active New York corporation), and Lopez, against Metaflow

1  Technologies Inc. ("Metaflow" – a California corporation) and Val Popescue
2  ("Popescue"), then-President of Metaflow.  The plaintiffs asserted claims for breach of
3  contract and specific performance.  Complaint ("Cplt") ¶ 8.

4        Lopez was a shareholder in both Andarax entities, and the president of each.  He
5  was the sole director of Andarax Corporation.  He was also a director of Andarax
6  Technologies, along with Francisco Lopez (now deceased) and Emilio Lopez (now living
7  in Canada).

8        The litigation was allegedly resolved by a settlement in August 1990, resulting in
9  the issuance of promissory notes by Metaflow to Andarax Technologies and Andarax
10 Corporation (collectively "Andarax").  Both notes were dated October 25, 1990, and both
11 were signed by Popescue as President of Metaflow.  The note issued to Andarax
12 Technologies was in the amount of $110,000, with interest on unpaid principal accruing
13 at 12% per year, and the note issued to Andarax Corporation was in the amount of
14 $5,000, also carrying the 12% rate of interest.  Cplt ¶ 9, Exhs. A, B.  Neither of the notes
15 included any provision regarding a schedule for payment or a deadline for payment.

16       The two promissory notes were allegedly executed in accordance with a related
17 Escrow Agreement dated October 31, 1990, between Metaflow, Andarax, and Sunwest
18 Bank of Albuquerque, NA ("Sunwest" – now part of Bank of America).  The Escrow
19 Agreement, which Sunwest executed as the escrow agent, provided that payment to
20 Andarax by Metaflow would be made pursuant to a December 21, 1989 Product
21 Development Agreement between Metaflow, LSI Logic Corporation ("LSI"), and Hyundai
22 Electronics America ("Hyundai").  Cplt ¶ 10, Exhs. C, D.

23       The Escrow Agreement provided that Andarax would receive a percentage of
24 certain incentive payments made under the Product Development Agreement, and
25 directed that those payments be made to Sunwest.  Id., Exh. C.  The Product
26 Development Agreement provided that the incentive payments would be due to Metaflow
27 for sales resulting from the implementation by LSI and Hyundai of certain technology.  Id.
28 ¶ 11, Exh. D.  The term of the Product Development Agreement was December 21, 1989,

United States District Court
Northern District of California

2

1  to August 32, 1991.  Id.

2        Lopez claims that he entered into an agreement with Andarax, pursuant to which

3  he would receive the first $95,000 of any settlement payment Andarax received from

4  Metaflow.  He also asserts that in April 1990, Metaflow's Board of Directors assigned him

5  all interests it had in the Metaflow promissory notes.  Id. ¶ 12, Exh. E.  However, Lopez

6  contends, he never received any payment on the notes, purportedly because Metaflow

7  never had the money to pay.  Lopez Declaration in Support of Motion to Dismiss ("Lopez

8  Decl.") ¶¶ 8-9.

9        ST Micro alleges that Andarax Technologies was terminated in September 1994,

10  and that Andarax Corporation was dissolved in September 1992.  Cplt ¶ 13.  ST Micro

11  asserts that the California Secretary of State has no records showing that either Andarax

12  entity was ever registered to do business in California.  Id.  In May 1997, ST Micro's

13  predecessor, SGS-Thompson Microelectronics acquired a majority interest in Metaflow

14  pursuant to a stock purchase agreement.  In June 2001, Metaflow merged into ST Micro.

15  Id. ¶ 14.

16        Lopez claims that on March 25, 2015, almost 14 years after Metaflow merged into

17  ST Micro, Bruce Lightner, the former VP of Metaflow, told him that various development

18  and/or licensing agreements had been structured in a fashion whereby certain cross-

19  licensing agreements were in place, which deprived Andarax, and thus, Lopez, from

20  receiving payments on the notes.  Lopez Decl. ¶ 10.  Also on March 25, 2015, Lopez

21  contacted ST Micro's VP of Investors' Relations with a demand that ST Micro pay him the

22  amounts outstanding on the Metaflow promissory notes.  He asserted that he had located

23  the notes in a New Mexico trust account in 2010.  Cplt ¶ 15, Exh. F.

24        ST Micro claims it informed Lopez it had no knowledge of the two promissory

25  notes, nor any knowledge of his relationship with Metaflow.  ST Micro also asserted that

26  even if the promissory notes and escrow agreement were valid, they were not made in

27  Lopez's individual capacity, and moreover, that any enforcement action on the notes

28  would be time-barred.  Id. ¶ 16, Exh. G.  In May 2015, Lopez renewed his demand for

3

1   payment, stating that he would accept $440,000 in full payment of principle and accrued

2   interest; and ST Micro followed up by filing this action.  Cplt. ¶ 17, Exhs. H, I.

3        On August 27, 2015, ST Micro filed the complaint in the present action, alleging

4   that on August 18, 2015, Lopez threatened to sue ST Micro for breach of contract on two

5   promissory notes that Lopez claims were assigned to him more than 25 years ago, by

6   now defunct companies.  ST Micro seeks a judicial declaration that there is no contract or

7   breach; that Lopez lacks standing to sue ST Micro on the notes; that Lopez is not entitled

8   to any payment for breach of contract because of failure to satisfy contractual terms or

9   conditions precedent; and that any action on the promissory notes is time-barred.

10        Lopez now seeks an order dismissing the case for improper venue, or in the

11   alternative, transferring the case to the Southern District of California.

**DISCUSSION**

A.   Legal Standard

14        "The district court of a district in which is filed a case laying venue in the wrong

15   division or district shall dismiss, or if it be in the interest of justice, transfer such case to

16   any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  If a

17   defendant files a motion pursuant to Federal Rule of Civil Procedure 12(b)(3) to dismiss

18   for improper venue, it is the plaintiff's burden to establish that venue is properly in the

19   district where the suit was filed.  Piedmont Label Co. v. Sun Garden Packing Co., 598

20   F.2d 491, 496 (9th Cir. 1979).

21        In addition, "[f]or the convenience of parties and witnesses, in the interest of

22   justice, a district court may transfer any civil action to any other district or division where it

23   might have been brought . . . " 28 U.S.C. § 1404(a).  The party moving for transfer for the

24   convenience of parties and witnesses the burden of demonstrating transfer is

25   appropriate.  Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 279 (9th Cir.

26   1979).  In considering a § 1404(a) motion to transfer, the court must look at each of the

27   enumerated factors – whether the action could have been brought in the proposed

28   transferee district, the convenience of the parties, the convenience of the witnesses, and

4

the interests of justice.  Hatch v. Reliance Ins. Co., 758 F.2d 409, 414 (9th Cir. 1985).

If the action could have been brought in the transferee venue, the court then must determine if the defendant has made a "strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum" by considering private factors relating to "the convenience of the parties and witnesses" and public factors relating to "the interest of justice," including "the administrative difficulties flowing from court congestion and [the] local interest in having localized controversies decided at home." Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986) (internal quotation marks omitted).

B.    Defendant's Motion

Lopez, the sole defendant in this case, resides in Brentwood, which is located in this judicial district.  Nevertheless, he claims that venue is improper in this district. Venue in a civil action is proper in

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated: or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b).

Lopez concedes that he resides in this district but argues that "an appropriate analysis of venue would have to include [d]efendant's predecessors in interest" – the Andarax entities – "as those are the rights being enforced and [d]efendant's predecessor in interest is the party to the note, not [d]efendant."  He claims that because neither of the now-defunct Andarax entities was incorporated here or had a principal place of business here, § 1391(b) "would not confer jurisdiction in this district."

Lopez also asserts that venue is not proper in this judicial district because it is not the district "in which a substantial part of the events or omissions giving rise to the claim occurred."  He asserts that because the notes were entered into in San Diego, and

1   provide that payment is to be made in San Diego, and because none of the other relevant

2   transactions or events relating to the underlying claim occurred in this district, the

3   Southern District of California is the proper district.

4       The motion to dismiss or transfer for improper venue is DENIED.  Rule 12(b)(3)

5   and 28 U.S.C. § 1406(a) allow for dismissal only when venue is "wrong" or "improper."

6   Atlantic Marine Constr. Co. v. U.S. Dist. Court, 134 S.Ct. 568, 577 (2013).  Whether

7   venue is "wrong" or "improper" depends on whether the court in which the case was

8   brought satisfies the requirements of federal venue laws.  Id.

9       The question whether venue is "wrong" or "improper" is generally governed by 28

10  U.S.C. § 1391.  That provision states that "[e]xcept as otherwise provided by law . . . this

11  section shall govern the venue of all civil actions brought in district courts of the United

12  States."  Id. § 1391(a)(1) (emphasis added).  When venue is challenged, the court must

13  determine whether the case falls within one of the three categories set out in § 1391(b).

14  If it does, venue is proper; if it does not, venue is improper, and the case must be

15  dismissed or transferred under § 1406(a).  A case that satisfies § 1391 may not be

16  dismissed under § 1406(a) or Rule 12(b)(3).  See Atlantic Marine, 134 S.Ct. at 577.

17      Here, the complaint seeks a judicial declaration that Lopez has no basis upon

18  which to seek to recover from ST Micro under the promissory notes.  Regardless of the

19  validity of that claim, or the details of the events that led to the filing of the action, Lopez

20  is the sole defendant named in the case, as it was Lopez who made the demand on ST

21  Micro.  Lopez resides in this judicial district.  Thus, § 1391 is satisfied, and venue is

22  proper here.[1]

23      As for the alternative motion to transfer the case to the Southern District of

24  California for the convenience of parties and witnesses, and in the interests of justice, the

25  court finds that Lopez has not met his burden, and that the motion must be DENIED.

26      The district court has discretion "to adjudicate motions for transfer according to an

27  

28  [1]   Lopez's counsel effectively conceded at the hearing on the motion to transfer that
     Lopez has no basis for asserting improper venue.

United States District Court
Northern District of California

1   individualized, case-by-case consideration of convenience and fairness." Jones v. GNC

2   Franchising, Inc., 211 F.3d 495, 498 (9th Cir. 2000) (citing Stewart Org. v. Ricoh Corp.,

3   487 U.S. 22, 29 (1988)).  Courts ordinarily examine a number of factors, but "[n]o single

4   factor is dispositive." Ctr. for Biological Diversity v. Kempthorne, 2008 WL 4543043, at *2

5   (N.D. Cal. Oct. 10, 2008).  Instead, the weighing of the factors for and against transfer is

6   best left to the discretion of the trial judge." Ventress v. Japan Airlines, 486 F.3d 1111,

7   1118 (9th Cir. 2007).

8       In this district, courts commonly examine some variation of the following factors to

9   determine convenience and fairness:

10          (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the
            convenience of the witnesses; (4) ease of access to evidence; (5) familiarity
11          of each forum with applicable law; (6) feasibility of consolidation of other
            claims; (7) any local interest in the controversy; and (8) the relative court
12          congestion and time to trial in each forum.

13   Vu v. Ortho-McNeil Pharm., Inc., 602 F.Supp.2d 1151, 1156 (N.D. Cal. 2009); Williams

14   v. Bowman, 157 F.Supp.2d 1103, 1106 (N.D. Cal. 2001); see also Jones, 211 F.3d at

15   498-99; Decker Coal, 805 F.2d at 843.

16       With regard to the convenience of the parties, Lopez argues that Metaflow, ST

17   Micro's predecessor, was located in San Diego County, and that his own predecessors-

18   in-interest (the defunct Andarax entities) were located in Canada and New York.  He

19   claims that the proposed transfer "would not be less inconvenient than the current

20   District, and in fact, would be more convenient given the location of the key witnesses" –

21   and thus, that transfer of this case to the Southern District of California "would not

22   severely inconvenience either party."

23       The court finds that this factor does not favor transfer.  Lopez resides in this

24   judicial district, and thus cannot claim that litigating in this district would be inconvenient

25   for him.  The fact that Metaflow was located in San Diego prior to its merger into ST Micro

26   is irrelevant for purposes of determining the convenience of the parties as of the time the

27   complaint was filed.  ST Micro has corporate offices in this district, and chose to litigate

28   here.  While the plaintiff's choice of forum is not dispositive, the court should give it some

7

1   weight when deciding whether to grant a motion to change venue, and "[t]he defendant

2   must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice

3   of forum."  Decker Coal, 805 F.2d at 843.

4        Transfer should not be ordered simply to make it more convenient for the

5   defendant, and the venue transfer provisions of § 1404(a) are not intended to merely shift

6   the inconvenience to the plaintiff.  Schwarzer, et al., § 4:732; See also Lax v. Toyota

7   Motor Corp., 65 F. Supp. 3d 772, 776 (N.D. Cal. 2014) ("It is not enough for the

8   defendant to merely show that it prefers another forum, and transfer will also not be

9   allowed if the result is merely to shift the convenience from one party to another."); Catch

10  Curve, Inc. v. Venali, Inc., 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006) (defendant

11  "must demonstrate that the present forum will result in a clear balance of inconvenience

12  to him or her").   Here, given that Lopez resides in this district and ST Micro has

13  corporate offices here and chose to file suit here, the court finds that the convenience of

14  the parties clearly weighs against transfer.

15       The relative convenience of the witnesses is often the most important factor in the

16  § 1404(a) analysis.  Saleh v. Titan Corp., 361 F.Supp. 2d 1152, 1160 (S.D. Cal. 2005).

17  The parties should inform the court who the witnesses are, where they are located, what

18  their testimony will be, and why such testimony is relevant or necessary.  See id. at 1161-

19  65; see also Clark v. Sprint Spectrum L.P., 2010 WL 5173872 at *4-5 (N.D. Cal. Dec. 15,

20  2010).

21       Lopez has identified five witnesses who reside in San Diego County – Popescue

22  (former president of Metaflow, who signed the promissory notes), Lightner (a founder of

23  Metaflow, not alleged to have been involved in the settlement of the lawsuit), and three

24  attorneys who represented either Andarax or Metaflow in the 1989 litigation and the 1990

25  settlement.  He claims that these witnesses have information about the statute of

26  limitations, the interpretation of the agreements, the question whether he (Lopez) has

27  standing, and about Metaflow's ability to pay on the notes.

28       While he argues that these witnesses can testify regarding the settlement

8

1    agreement and the notes, and regarding whether there were any cross-license

2    agreements that prevented any money coming to Andarax, he does not provide any

3    details regarding what that information might be.  He also makes vague references to the

4    testimony of "former Andarax employees," plus the testimony of Emilio Lopez who now

5    resides in Canada.  However, the motion includes no declarations or affidavits regarding

6    the content or relevance of the proposed testimony.

7         ST Micro has identified five witnesses who reside in the Northern District of

8    California – Kent Marshall (named trustee of the Escrow Agreement); Richard Nakashima

9    (former Metaflow employee, who now works for Hynix, successor to Hyundai); corporate

10   representatives of LSI and Hyundai (now Hynix), both of which were parties to the

11   Product Development Agreement; and defendant Lopez himself.  In addition, ST Micro

12   points to Sunwest (the escrow agent, now part of Bank of America), and former Metaflow

13   employees Charles Stack and Marcin Nowicki, who reside in the Eastern District of

14   California and Austin Texas, respectively.

15        At the hearing, ST Micro asserted that Lopez, who resides in this district, is the

16   most important witness, and that the face of the agreements need not be interpreted with

17   the aid of witnesses.  However, ST Micro indicated that the former Metaflow employees it

18   has identified will likely testify on the same subjects as Lopez's witnesses, and that

19   Hyundai and LSI will provide corporate representatives to testify that no payments were

20   made under the Product Development Agreement pursuant to the Escrow Agreement,

21   although ST Micro could not say exactly who Hyundai and LSI would designate to testify

22   as their representatives.

23        The court finds that the convenience of the witnesses is essentially a wash, as

24   neither party has provided specific details about the substance of any expected witness

25   testimony, nor made a strong showing with regard to the nature and quality of the

26   anticipated testimony.  In particular, since it is Lopez's motion, it is his burden to show

27   that transfer is warranted.  The type of general testimony that he has described is

28   normally not be considered sufficient to sustain a defendant's burden of persuasion on a

United States District Court
Northern District of California

1    motion to transfer.  See E. & J. Gallo Winery v. F. & P. S.p.A., 899 F. Supp. 465, 466

2    (E.D. Cal. 1994).

3          Nor has Lopez explained how any of the witnesses would be inconvenienced if the

4    case remains in this district.  Depositions of witnesses must be taken near their

5    residences regardless of where the suit is being litigated, and that Lopez has made no

6    showing that any of the witnesses would not be able to travel to this district in the unlikely

7    event of a trial.  At best, a transfer of venue would only shift, not eliminate, any

8    inconvenience.  However, §1404 provides for transfer to a more convenient forum, "not to

9    a forum likely to provide equally convenient or inconvenient."  Hua v. MEMC Electr.

10   Materials, Inc., 2009 WL 1363545, at *3 (N.D. Cal. May 14, 2009).

11         Finally, the court finds that Lopez has not met his burden of showing that the

12   "interests of justice" warrant transfer to the Southern District of California.  As explained

13   above, the plaintiff's choice of forum, while generally not viewed as dispositive, does

14   weigh against transfer.

15         As for the ease of access to evidence, Lopez contends that the promissory notes

16   were created in San Diego and that the attorneys with knowledge of the drafting of the

17   notes reside there; and further, that availability of compulsory process to compel

18   attendance of non-party witnesses favors transfer, as most of his witnesses reside in San

19   Diego.  However, this argument ignores ST Micro's contention that it plans on calling as

20   witnesses several former Metaflow employees who now reside in the Northern District or

21   in some district other than the Southern District of California.

22         Moreover, the availability of non-party witnesses is a relevant factor only when a

23   party presents evidence of witnesses unwilling to attend trial, which Lopez has not done.

24   Further, he has not shown that access to sources of proof would be easier in the

25   Southern District or that evidence would be somehow unavailable if the case remains in

26   his home forum (or that the costs of litigating in this district would be higher than the costs

27   of litigating in San Diego).  Indeed, the relevant documents (promissory notes and other

28   agreements) have already been submitted to the court as exhibits in this case, and given

1    the length of time that has passed and the fact that the Andarax entities no longer exist, it

2    is not clear that other documentary evidence will be found (and Lopez has not argued

3    that any exists).

4         As for the respective courts' familiarity with the applicable law, both districts are

5    located in California, and both courts will be applying California law.  Thus, it seems clear

6    that each forum will be equally familiar with the applicable law.

7         As for the parties' contacts with the forum, and the local interest in the controversy,

8    while it is true that the relevant agreements were negotiated and executed in San Diego,

9    and provided for payment to the Andarax entities (Lopez's alleged predecessors), those

10   entities no longer exist and the notes were executed nearly 25 years ago.  In addition,

11   given that Lopez resides here and has pointed to no contacts either party has with the

12   Southern District – apart from the contacts between Andarax and Metaflow more than 25

13   years ago – it appears that the parties have as many contacts with this forum as they do

14   with San Diego.

15        Lopez has not established that a majority of the "justice" factors favors transfer.

16   Added to that, the convenience of the parties weighs against transfer, and the

17   convenience of witnesses neither favors nor disfavors transfer.  The court finds that this

18   showing is not sufficient to satisfy Lopez's burden as the moving party.

**CONCLUSION**

20        In accordance with the foregoing, the motion is DENIED.

22   **IT IS SO ORDERED.**

23   Dated:  December 17, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge

11